IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EVA BELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv0571-VPM |
| ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eva Bell ["Bell"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2000). Upon review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision should be reversed and remanded for an award of benefits.

**I.   FACTS AND PROCEDURAL HISTORY**

On 18 December 2002, Bell filed an application for Supplemental Security Income (R. 39-41) in which she alleged disability as of 5 September 2002 due to pain from a prior injury to her ankle, hypertension and multiple abscesses on and infections in her breasts (R. 46).

Bell, who is currently 45 years old, is a high school graduate with some college education at the community college level (R. 238). She has previously worked as a housekeeper, deli cook and an assistant at a school for challenged children (R. 18, 439-441).

Bell's application was denied initially (R. 23-27), and a hearing before Administrative Law Judge ["ALJ"] Michael D. Anderson resulted in an unfavorable decision (R. 11-20). The Social Security Administration's Appeals Council denied Bell's request to review the ALJ's decision, rendering his opinion the final decision of the Commissioner (R. 3). Bell then timely filed this lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." ***Miles v. Chater***, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," ***Kelley v. Apfel***, 185 F.3d 1211 (11th Cir. 1999) (citing ***Graham v. Apfel***, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner

---

[1] In ***Graham v. Apfel***, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See* ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 416.912(a) (2000).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled. *See* 20 C.F.R. §§ 416.920; *see also ****Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether she suffers from a severe impairment that has lasted or is expected to last 12 months or more. §§ 404.1509, 416.909, 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations." §§ 404.1545(a), 416.945(a). Considering her RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of his past relevant work. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

### B.   *Applying the Standard: The ALJ's Findings*

For the purpose of this lawsuit, the court need only discuss the ALJ's decision to "reject" the assessment of Bell's RFC provided by her treating physician, Bryan R. Whyte, M.D. (R. 16-17). As discussed in the ALJ's opinion, Dr. Whyte determined that Bell

> is able to occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds; sit for 2 hours in an 8-hour workday; stand or walk for 1 hour in an 8-hour workday; requires an additional 2 hours of rest in addition to a morning break, a lunch break, and an afternoon break; requires an assistive device to ambulate even minimally in a normal work day; should avoid heat due to high blood pressure; occasionally perform work activities involving reaching (including overhead); frequently perform work activities involving fine manipulation (finger dexterity) and operate motor vehicles; and rarely perform work activities involving pushing and pulling movements (arm and/or leg controls), climbing (stairs or ladders) and balancing, gross manipulation (grasping, twisting, and handling), bending and/or

> stooping movements, and work with or around hazardous machinery.

(R. 17) (citation to the record omitted).

The ALJ's entire explanation for discrediting Dr. Whyte's opinion is that

> [t]his is inconsistent with the doctor's own treatment notes which reflect that the claimant had multiple debridement and drainage, and incision of the breast due to abscesses. At her follow ups, the claimant did not report any severe pain. At her follow up on September 25, 2003, on examination, Dr. Whyte notes that the claimant is a pleasant healthy robust female in no distress.

(R. 17) (citation to the record omitted).

C.   **Dr. Whyte's Assessment of Bell's RFC**

Bell contends that the ALJ's erred because (1) he did not follow the appropriate analysis and (2) his reasons for discrediting Dr. Whyte's opinion are not supported by substantial evidence in the record. The court agrees.

Prior to addressing the merits of Bell's challenge, however, a brief discussion of her history with Dr. Whyte seems appropriate, particularly so since the ALJ's recitation of the record in this regard is somewhat inaccurate. Contrary to the ALJ's finding that Dr. Whyte "treated the claimant from November 28, *2001*, through August 20, *2002*,"[2] (R. 12) (emphasis added) the administrative record indicates that their treatment relationship began

---

[2] This oversight is puzzling considering the ALJ's reference to Bell's September 2003 visit with Dr. Whyte in attempting to discredit his opinion.

in November *2000* and proceeded until at least September *2003* (R. 306-08, 379) but likely longer.[3]

As a surgeon, Dr. Whyte's relationship with Bell was limited primarily to the treatment of her breast condition, which, as the ALJ described it in a somewhat dismissive fashion, led to "a number of debridement and drainage, and incision of the breast[s]" (R. 16). Although much of the records concerning Bell's treatment relationship with Dr. Whyte are fact laden and rather nondescript, on at least two occasions Dr. Whyte provided deeper insight into his perception of Bell's condition. In January 2002, he noted,

> Ms. Bell is well known to me. She is a young lady with bilateral large pendulous breasts susceptible to multiple infections with and without surgical intervention. She most recently had a large right breast abscess which required incision and drainage. She had a similar one on the left after a breast biopsy, and what I did is remove a large area of breast tissue to include the area of recurrent infection, and that site has since healed. She presents today saying that she would like to have a similar procedure done on the right because of her history of recurring breast abscesses in this area, and hopefully this will remove the area of involvement and she will not have to get this done any more. Her major concern is that she has to miss so much time from work, but I think this is not an unwise thing to do to assist with healing. I have explained to her that removing this area may prevent further recurrences, but I cannot give her a 100% guarantee. I will schedule her for a wide excision versus

---

[3]The ALJ's discussion of Dr. Whyte's treatment relationship fails to note that records provided by "Dr. Falashade" indicate Bell's request, per Dr. Whyte, in October 2003 for a surgery referral to address her breast abscesses (R. 250). Instead, in discussing this particular record, the ALJ noted that "[t]he progress note dated October 29, 2003, shows that the claimant was assessed with GERD; hypertension stable; and multiple breast abscesses (Exhibit 9F pg. 3)." *Id.*

In addition, although the ALJ did not overlook Bell's breast surgery in November 2000, he appears to have overlooked the fact that the surgery was performed by Dr. Whyte.

>   lumpectomy of the area involved in about a week.

(R. 88).

In July 2002, after Bell had visited him for additional trouble with her breast, he wrote,

>   I have had a lengthy discussion with this patient that these problems are indeed difficult especially when you are unable to find exactly what the primary is [sic]. I am going to refer her to an infectious disease specialist for a consultation, and at the present time I do not feel that any further surgical intervention is required. I have discussed with her that if she needs any further surgical intervention, I will probably refer her to a tertiary care center for further care. I have given her some Ultracet for her pain and will make her an appointment to see Dr. Bedsole, who I would like to discuss this case with.

(R. 86).

While both of the entries quoted immediately *supra* preceded Bell's alleged onset date, they are nonetheless crucial to understanding her condition as it existed during the relevant time period because the record does not indicate that her condition really changed. Any evaluation of Dr. Whyte's opinion regarding Bell's RFC or the appropriateness of the ALJ's conclusion that Dr. Whyte's assessment lacked merit is incomplete without considering these statements, which the ALJ did not mention.

A treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . .." 20 C.F.R.§§ 416.927(d). When the ALJ determines that the treating physician's opinion is not entitled to controlling weight,

7

he or she must take the following factors into consideration when deciding what weight to give the opinion:

(1) length of treatment relationship and frequency of examination;

(2) nature and extent of the treatment relationship;

(3) the supportability of the opinion given;

(4) the consistency of the opinion;

(5) whether the treating physician is a specialist in a relevant area; and

(6) any other factors the claimant raises that "tend to support or contradict the opinion."

§§ 416.927 (d)(2)-(6).

At the very least, in the Eleventh Circuit, treating physicians' opinions are accorded "substantial or considerable weight unless good cause is shown . . .." ***Phillips v. Barnhart***, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting ***Lewis v. Callahan***, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause exists when, for example, "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241.  The ALJ must state his or her reasons for the weight given the opinion.  § 416.927(d)(2).

Although the ALJ stated specifically that he rejected Dr. Whyte's opinion, thus giving his opinion no weight, his explanation for doing so is unacceptable.  Generally, unexplained conclusions, such as the ALJ's statement that Dr. Whyte's assessment "is inconsistent with

[his] own treatment notes," are inadequate to justify wholly rejecting the opinion of a treating physician, particularly one with a long-term relationship with the claimant.  *See* ***Schnorr v. Bowen***, 816 F.2d 578, 582 (11th Cir. 1987) (rejecting the ALJ's "blanket statement that the evidence as a whole does not justify the treating physician's opinion").

It stands to reason that a conclusion supported by an unsupportable explanation is no better.  In the instant case, the ALJ appears to suggest that Dr. Whyte could not have assessed Bell's relevant functional limitations *because* his notes "reflect that the claimant had multiple debridement and drainage, and incision of the breast due to abscesses" (R. 17).  Arguably, the ALJ was expressing skepticism regarding how Bell's recurring problems with her breasts would have affected her ability to sit, stand and walk, or her need to rest for two hours during an eight hour work day.

However, it is not the *ALJ*'s job to question the medical opinion of a treating physician without evidence sufficient to raise such a question.  Moreover, it is not appropriate for the ALJ to posit himself in the place of claimants presenting with infirmities, whether or not he is familiar with the infirmities.  Certainly, in the absence of evidence, the ALJ should not have attempted to second-guess the implications of an infirmity which is alien to his experience.

Thus, if Dr. Whyte says that Bell's recurring, infection-producing breast abscesses impair her ability to sit, stand or walk, then they do, unless there is evidence in the record that they do not.  *See* ***Schnorr v. Bowen***, 816 F.2d 578, 582 (11th Cir. 1987) (finding that the ALJ "failed to present good cause for discounting the opinions" of the claimant's treating

physicians when "[c]onsidering the record as a whole, the medical evidence [did] not ***conclusively counter***" their opinions).

The ALJ next supported his conclusion by noting that the claimant had not reported "severe pain" on her visits to Dr. Whyte (R. 17). Dr. Whyte, however, opined that Bell's pain was moderate, not severe (R. 246).

Finally, the ALJ noted that Dr. Whyte once described Bell as "a pleasant healthy robust female in no distress" (R. 306). The ALJ failed to mention, however, that on that same visit Dr. Whyte noted that Bell's right breast had an "abscess around the nipple, somewhat firm, and tender to palpation" (R. 306), and he performed surgery on the abscess the very next day (R. 308).

Thus, the ALJ's rationale for discrediting Dr. Whyte appears disingenuous. That conclusion, however, should not be construed as a full endorsement of Dr. Whyte's opinion. Nevertheless, the court need not be convinced that Bell's condition limited her to the extent described by Dr. Whyte to conclude that the Commissioner failed to demonstrate good cause for discounting his opinion. The court need only conclude that the reasons provided by the ALJ are not supported by the record. They are not.

The Commissioner's attempt to offer a *post hoc* justification for discrediting Dr. Whyte's opinion is of little value. *See* **Shinn** **ex rel.** **Shinn v. Comm'r of Soc. Sec.**, 391 F.3d 1276, 1287 (11th Cir. 2004) (declining to rule against the claimant on grounds raised by the Commissioner because they had not been considered by the ALJ in his opinion); ***Owens v. Heckler***, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm the Commissioner's

decision "simply because some rationale might have supported the ALJ's conclusion") (citing **Sec. & Exch. Comm'n v. Chenery Corp.**, 318 U.S. 80 (1943)). She all but ignores the ALJ's stated rationale and attempts to find inconsistencies where none exist, which may explain her lackluster endorsement of the ALJ's ultimate conclusion. As she states in her brief, "Dr. Whyte's records are not *entirely* consistent with his opinion" (Doc. # 12, p. 6) (emphasis added).

The Commissioner accords great significance to her own interpretation of the medical records, which she contends indicate Dr. Whyte's recognition of periods during which Bell was "asymptomatic" (Doc. # 12, p. 7).[4] Just as the ALJ did, however, the Commissioner in her brief fails to direct the court to any specific aspect of Dr. Whyte's treatment notes that conflict with his assessment of Bell's RFC. Instead, the Commissioner focuses primarily on Bell's testimony, which is not relevant, as well as the fact that Dr. Whyte last saw Bell for her breast condition in November 2003. Considering that Dr. Whyte had treated Bell for breast abscesses for approximately three years and Bell has alleged an onset date of more than twelve months before her last visit to Dr. Whyte, the fact that his assessment of Bell's RFC occurred several months later is not significant.

Finally, the Commissioner directs the court to an assessment of Bell's RFC provided by a one-time examiner, Alan M. Babb, M.D., which differed from Dr. Whyte's (Doc. # 12,

---

[4]The Commissioner also contends that Bell's condition should be viewed "on an episode-by-episode basis" (Doc. # 12, p. 6). Her medical opinion, however, is irrelevant, particularly when Bell's treating physician did not appear to view her condition as a series of isolated and unrelated events (R. 85-88), as indicated by his statements quoted *supra*.

p. 7). Dr. Babb's opinion has no bearing on whether Dr. Whyte's assessment was inconsistent with his own records. Morever, although the court need not decide whether the ALJ's reliance on Dr. Babb's assessment is supportable, the court nevertheless notes that the validity of Dr. Babb's assessment is highly questionable because he does not appear to have considered Bell's breast condition as a factor (R. 237-39). This may explain the ALJ's decision to adopt Dr. Babb's assessment only in part, which, of course, leads the court to wonder what the ALJ meant when he wrote, "I give substantial weight to Dr. Babb's opinion regarding the claimant's functional abilities" (R. 16).[5]

The opinions on which the Commissioner relies, authored by the Eighth Circuit Court of Appeals, buttress the court's conclusion. *See Cruze v. Chater*, 85 F.3d 1320 (8th Cir. 1996); *Johnson v. Chater*, 87 F.3d 1015 (8th Cir. 1996); *Bentley v. Shalala*, 52 F.3d 784 (8th Cir. 1995). In *Cruze*, for example, the claimant contended that the ALJ erred by discrediting a treating source opinion that "any significant degree of walking about . . . would put Cruze's cardiac status at risk." *Cruze*, 85 F.3d at 1324. The court disagreed.

> Dr. Austin's opinions have largely been inconsistent and are not fully supported by the objective medical evidence. After the February treadmill test, which was positive for ischemia, Dr. Austin stated that Cruze could return to work, just not at his old job at Dial. After this positive evaluation, Cruze's condition improved further, as evidenced by the July treadmill exam. If (1) Cruze could return to some work in February, despite the presence of ischemia, and (2) Cruze's condition improved

---

[5]It also leads the court to question the factual basis for the ALJ's assessment of Bell's RFC. By rejecting Dr. Whyte's assessment and only partially accepting Dr. Babb's, the ALJ appears to have relied upon his own medical opinions regarding the effects of Bell's conditions.

> throughout the year, then we find it difficult to accept Dr. Austin's September decision that Cruze's cardiac status suddenly put him at risk to return to any work.

*Id.* at 1325.

A coherent, logical, evidence-based explanation such as that provided by the Eighth Circuit is precisely what is lacking in the Commissioner's decision in the instant case. *See also* **Johnson**, 87 F.3d at 1018 (discrediting two treating physicians' opinions that the claimant was disabled when one later "recommended that Johnson seek active employment" and the other "gave Johnson a zero impairment rating based upon the American Medical Association's Guidelines"); **Bentley**, 52 F.3d at 784 (relying on statements made by treating physicians that directly conflicted with other treating physicians' conclusions regarding the claimant's functional limitations).

Having concluded that the ALJ improperly discredited Dr. Whyte's assessment of Bell's RFC, the court and the Commissioner must accept that opinion as true. **MacGregor v. Bowen**, 786 F.2d 1050, 1053 (11th Cir. 1986) ("Where the Secretary has ignored or failed to properly refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true."). At Bell's hearing, the vocational examiner testified that a person with the limitations assigned by Dr. Whyte would be precluded from work (R. 443-44). Therefore, accepting Dr. Whyte's assessment as true, the court concludes that Bell is disabled as a matter of law. Further proceedings are not necessary other than that which may be required to award Bell benefits.

## IV. CONCLUSION

Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for an award of benefits to the plaintiff.

DONE this 30th day of June, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE